**In re: SYNCOR INTERNATIONAL CORP. SECURITIES LITIGATION.**

**Milton Arbitrage Partners, LLC; et al., Plaintiffs–Appellants,**

v.

**Syncor International Corp.; et al., Defendants–Appellees.**

**No. 05–55748.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 18, 2007.

Filed June 12, 2007.

As Amended on Denial of Rehearing Oct. 9, 2007.

Joe Kendall, Esq., Provost Umphrey Law Firm, LLP, Dallas, TX, Frank J. Johnson, Esq., Brett M. Weaver, Esq., Johnson Law Firm APC, San Diego, CA, for Plaintiffs–Appellants.

Daniel S. Floyd, Dean J. Kitchens, Esq., Gibson Dunn & Crutcher, LLP, Gordon A. Greenberg, Esq., Allan Schare, McDermott Will & Emery, LLP, Eric S. Waxman, Esq., Amy Park, Esq., Skadden Arps Slate Meagher & Flom, LLP, Los Angeles, CA, for Defendants–Appellees.

Before: FARRIS and GOULD, Circuit Judges, and DUFFY *, District Judge.

### MEMORANDUM **

Plaintiffs, who purchased stock in Syncor International Corporation between 1998 and 2002, appeal the district court's dismissal of their Second and Third Amended complaints alleging that Syncor, its officers, and its directors made false and misleading statements in violation of SEC Rule 10b–5.[1] We reverse and remand as to defendants Monty Fu, Robert Funari, Haig Bagerdjian, and Syncor. We affirm as to all other defendants.

---

* The Honorable Kevin Thomas Duffy, Senior United States District Judge for the Southern District of New York, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

■ Treating plaintiffs' factual allegations as true, we conclude that defendants' statements about the reasons for Syncor's overseas earnings were misleading. Defendants made numerous statements attributing Syncor's overseas earnings to a variety of legitimate business practices, while omitting any mention of illegal payments. However, plaintiffs have alleged specific facts suggesting that illegal payments were in fact a significant reason for Syncor's overseas growth. Confidential Witness # 2 alleged that two officer defendants—Fu and Bagerdjian—privately credited the illegal payments for spurring overseas growth. When corporate officers credit an illegal payment scheme for raising revenues, a reasonable inference is that the scheme *did* raise revenues. Thus, defendants' statements attributing overseas growth solely to legitimate business practices were at least incomplete.

■ Incomplete statements are misleading if they "affirmatively create an impression of a state of affairs which differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir.2002). Defendants' statements meet this standard. By attributing Syncor's success solely to legitimate practices, defendants implicitly (and falsely) warranted that there were no illegal practices contributing to that success. *See In re Van der Moolen Holding N.V. Sec. Litig.*, 405 F.Supp.2d 388, 400–01 (S.D.N.Y.2005); *In re Providian Fin. Corp. Sec. Litig.*, 152 F.Supp.2d 814, 824–25 (E.D.Pa.2001).

---

1. We do not consider appellants' argument, raised for the first time in their reply brief, that the district court also erred in dismissing their § 20(a) cause of action. *See Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir.1986).

With respect to Fu, Funari, and Bagerdjian, the same basic facts that allege falsity also allege scienter. For instance, Witness # 2 alleges that Funari and Bagerdjian were both present at a 1998 meeting where Fu credited the illegal payments as increasing overseas revenues. This creates a strong inference that all three defendants believed the illegal payments were driving overseas growth.[2] Thus, their public statements attributing overseas growth solely to other factors were *intentionally* misleading.

However, plaintiffs have not shown that any of the other individual defendants acted with scienter. Plaintiffs principally seek to show the other defendants' scienter through "suspicious" stock sales. But stock sales only demonstrate scienter "when those sales are able to be related to the challenged statements." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1093 (9th Cir.2002). Plaintiffs have failed to sufficiently link defendants' stock sales to any specific misleading statements.

Allegations that defendants had a motive to inflate Syncor's stock, through bonus incentives tied to stock price, similarly fail to show scienter. Stock-based bonuses are common and have limited probative value as to scienter. *See Lipton v. Pathogenesis Corp.* 284 F.3d 1027, 1038 (9th Cir.2002).

Fu and Funari stated "We believe that we are in substantial compliance with all material laws and regulations applicable to our business." This may raise questions regarding Rule 10b–5 liability since neither Fu nor Funari believed Syncor to be in compliance with all applicable laws when they made this statement. For instance, Witness # 2 alleged that Fu used terms such as "bribe" and "buying off doctors" to refer to the payments, and that Funari was present when Fu used this language. Witness # 2 specifically told Funari at such time that the payment practice was "a problem." Taken as a whole, these facts create an inference that both Fu and Funari knew the payments were illegal.

Our function is satisfied when we identify issues sufficiently pled to raise triable questions. We need not consider the probability of success.

Because the plaintiffs properly pled Rule 10b–5 liability on the part of defendants Fu, Funari, and Bagerdjian, plaintiffs also properly pled liability on the part of Syncor. *See Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1234–35 (9th Cir.2004) (10b–5 cause of action against executives creates a cause of action against the company itself).

Each side shall bear its own costs.

AFFIRMED in part, REVERSED and REMANDED in part.

2. We note that the Supreme Court has recently clarified what it means for an inference to be "strong" in this context. *See Tellabs Inc. v. Makor Issues & Rights, Ltd.*, — U.S. —, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). Our conclusion that the inference of scienter is strong is a result of our consideration of the "plausible nonculpable explanations for the defendant[s'] conduct" forcefully advocated by the defendants in addition to inferences favoring the plaintiffs. *Id.* at 2510. Upon such review, the requisite inference "need not be irrefutable ... or even the most plausible of competing inferences." *Id.* (internal quotation marks and citation omitted). Rather, it need merely be, as we conclude it is here, "at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*